JOSEPH GIRGENTI *v.* CALI-CON, INC.
(5786)

BIELUCH, O'CONNELL and STOUGHTON, Js.

Argued March 16—decision released July 12, 1988

*Frazier G. Scott,* with whom, on the brief, was *Rona C. Lynch,* for the appellant-appellee (defendant).

*Philip M. Block,* for the appellee-appellant (plaintiff).

STOUGHTON, J. The defendant has appealed from a judgment for the plaintiff in a wrongful discharge action rendered after trial to the court. The plaintiff has cross appealed from the granting of the defendant's motion for summary judgment on the second count of the amended complaint.

The defendant claims that the trial court erred (1) in denying the defendant's motion for summary judgment, (2) in basing its conclusion on facts not pleaded, (3) in concluding that the plaintiff was terminated because he took precautions for the purpose of public safety, (4) in concluding that the plaintiff's termination was violative of public policy, (5) in concluding that the plaintiff's termination constituted the tort of wrongful discharge, and (6) in finding that the plaintiff's damages amounted to $40,000. We find no error on either the appeal or cross appeal.

The trial court found the following facts and reached the following conclusions. On September 10, 1983, the plaintiff was a projectionist at the defendant's theatre and had been so employed for at least one year prior to that date. His employment was subject to a contract between the defendant and Local 350 of the International Alliance of Theatrical Stage Employees and Moving Picture Operators of the United States and Canada (hereinafter referred to as the union). On that day, the plaintiff was operating the theatre alone, running the projector, selling tickets and selling merchandise at the refreshment stand. As he was selling tickets while the movie was running, he heard sounds from the projection booth which caused him to believe that there was a burglar within. The plaintiff telephoned the police and told them that someone was in the projection booth. When the police officers arrived, however, they refused to go into the theatre unless the plaintiff turned on the lights. The plaintiff called Andrew Rossetti, one of the officers of the defendant corporation, and Rossetti told the plaintiff that it was his responsibility to handle the situation. The plaintiff turned on the lights, but the police did not investigate further. Subsequently the plaintiff was fired.

The trial court found that the plaintiff had been discharged because he had complained to the defendant

and to the union that he had been forced to work in the theatre alone, and because he turned on the lights and thus caused the theatre to empty. The trial court concluded that those reasons were improper as violative of public policy. The trial court based its conclusion on General Statutes § 29-109[1] and the administrative regulations promulgated thereunder, § 29-109-109.[2] These regulations pertain to the safe operation of projection booths in theatres. It concluded that the plaintiff was required to work alone despite his complaints, and that he was concerned for the safety of the public and for himself when he heard a noise in the projection booth. For the reasons set forth, it found that the plaintiff was fired for taking precautions for public safety. It further found that he had been unable to secure a comparable job for approximately three years and that he had lost $40,000 in wages.

[1] "[General Statutes] Sec. 29-109. REGULATIONS AS TO MOVING PICTURE PROJECTORS AND FILMS. FIRE-PROOF BOOTHS. No moving picture projector involving the use of a photographic film shall be operated in any public building or place of public assemblage or entertainment until such precautions as the commissioner of public safety specifies have been taken against fire, panic or other personal hazards and a certificate of approval for such premises obtained from the commissioner specifying the number of persons that may be admitted to such premises or place at any one time. No moving picture film made of nitrocellulose or highly combustible material shall be used or exhibited in any premises or place mentioned herein unless such film, together with the projector and necessary accessories, is housed in a fire-proof room or booth of such size, type and design as the commissioner specifies, and a certificate of approval has been obtained from the commissioner authorizing such use of such room or booth. No person shall sell, rent, lend or in any way transfer or convey nitrocellulose or similar highly combustible moving picture film to any person except the manager or agent of any premises or place having a certificate of approval as required herein, or dispose of any scrap film except under regulations made by the commissioner."

[2] Regs., Conn. State Agencies § 29-109-109 provides: "PROJECTION ROOMS. (a) Smoking will not be permitted in a projection room at any time, and the finding of burnt matches and cigaret and cigar stubs therein will be considered presumptive evidence that this regulation has been violated.

"(b) The use or possession of intoxicating liquor in projection rooms is prohibited.

# I

## THE DEFENDANT'S APPEAL

The defendant's first claim is that the trial court erred in denying its motion for summary judgment. A full trial, however, produced a judgment against the defendant. As we have recently held, a denial of such a motion followed by a verdict against the movant is not appealable. *Greengarden* v. *Kuhn,* 13 Conn. App. 550, 552, 537 A.2d 1043 (1988). Accordingly, we will not review this claim.

---

"(c) Projection room doors shall be kept closed at all times but not locked. Each projection room door shall be equipped with a positive closing device.

"(d) The exhaust fan shall be kept running while projectors are in operation unless the projection room is equipped with an automatic safety switch for the starting of the fan.

"(e) Intake vents, as described in the regulations, shall be kept open at all times.

"(f) Magazine doors on projectors shall be kept closed while projectors are in operation.

"(g) No film shall be unnecessarily exposed.

"(h) The projection room shall be kept clean and free from all combustible matter. No books, magazines or periodicals will be permitted. If clothing is kept in a projection room, it shall be in a steel locker and only necessary things may be kept in such locker.

"(i) The projectors and all of the equipment shall be kept clean, in good mechanical condition and free from waste oil or dirt.

"(j) All accidents and fires, no matter how small, shall be reported to the department by the projectionist immediately by telephone, collect.

"(k) The projectionist shall have his license in the projection room when operating and the certificate of approval of the projection room shall be posted in plain sight.

"(l) All spotlight and effect projector openings shall be kept closed while not in actual use.

"(m) No change shall be made in the projection room or any of the equipment of the same without prior notice to the department.

"(n) When a picture is being projected, the projectionist shall, at all times, stay in the projection room and give close attention to his duties as a projectionist.

"(o) Whenever a projectionist finds that the film received for exhibition is in such poor physical condition due to deterioration, faulty patches or torn sprocket holes that it is unsafe to use, he shall immediately notify the commissioner by telephone, collect, and may refuse to project such film."

The defendant's second assignment of error is that the conclusion of the trial court that the plaintiff was fired because of his complaints that he was forced to work alone and because he emptied the theatre by turning on the lights was drawn from facts which were in evidence, but were not alleged in the complaint. The allegations in a complaint serve to limit the issues to be decided upon trial and are calculated to prevent surprise to opposing parties. *Lundberg* v. *Kovacs,* 172 Conn. 229, 232, 374 A.2d 201 (1977). Facts found but not averred cannot be made the basis for a recovery. Id., 233. The defendant claims that the complaint alleged that the plaintiff was fired because he had sought aid for the protection of the public and himself in calling for the police. There was testimony, however, that he was discharged because he complained about working alone and because he emptied the theatre. The defendant contends that because these reasons were not alleged in the complaint there was a material variance between pleadings and proof.

The complaint in the present case is certainly not a model of good draftsmanship. There is no indication, however, that there was any objection to the testimony offered by the plaintiff. The appeal process should not be utilized to correct pleading deficiencies which could have been remedied in the trial court. *Fuessenich* v. *DiNardo,* 195 Conn. 144, 149, 487 A.2d 514 (1985). The failure to object to the testimony constituted a waiver of any variance between the pleadings and the proof. *Samson* v. *Bechtel,* 180 Conn. 96, 100, 429 A.2d 820 (1980). Furthermore, the amended complaint did allege that the plaintiff was required to operate the theatre without additional employees on the premises. It further alleged that he summoned the police, who directed him to turn on the lights, and that his employer also told him to turn on the lights and to do whatever was appropriate. We find that these allegations were suf-

ficient to permit introduction of the testimony from which the court drew its conclusion.

The third claim raised by the defendant is that the court erred in finding that the plaintiff was terminated because he took safety precautions. It is well settled that it is the province of the trial court to pass upon the credibility of witnesses and the weight to be accorded the evidence. This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found and whether the trial court could thereby conclude as it did. *Nulman's Appeal from Probate,* 13 Conn. App. 811, 812, 537 A.2d 495 (1988). The plaintiff testified that he had complained both to his employer and to his union that he had to work alone. The defendant concedes that there was sufficient evidence to support a finding that the plaintiff was fired for emptying the theatre. The plaintiff testified that he had called the police because he feared that there was an intruder in the projection room, and that the police refused to enter the theatre unless the plaintiff first turned on the lights. We find that it was not unreasonable for the trial court to find that the plaintiff emptied the theatre for purposes of public safety and self protection.

The defendant's fourth claim of error is that the trial court erred in concluding that the termination of the plaintiff was violative of public policy. The trial court determined that the principal issue in the case was whether the plaintiff's cause of action for wrongful discharge fell within the narrow public policy exception to the general proposition that contracts for an indefinite term of employment are terminable at will. It found that the plaintiff had proven a demonstrably improper reason for dismissal, the impropriety of which derived from an important violation of public policy. The public policy which the court found was violated

was the concern expressed in General Statutes § 29-109 and the regulations promulgated thereunder. These require that theatres be run in a safe manner. There can be little doubt that it is a public policy of the state that any place of public gathering be so controlled that the safety of the public is protected. Section 29-109 prohibits operation of a moving picture projector in a place of public entertainment until such precautions as the commissioner of public safety has specified have been taken against fire, panic or other personal hazards. Section 29-109-109 of the Regulations of Connecticut State Agencies deals generally with projection rooms, and § 29-109-109 (n) requires that, when a motion picture is being shown, the projectionist shall, at all times, stay in the projection room and give close attention to his duties as a projectionist. We cannot find that the conclusion of the trial court was unreasonable.

The defendant's fifth claim is that the trial court erred in concluding that the plaintiff's termination constituted the tort of wrongful discharge. An employer may be responsible in damages if a discharged employee can establish a demonstrably improper reason for his dismissal, the impropriety of which stems from a violation of public policy. *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980). The line must be drawn between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not. Id., 477. The employee has the burden of pleading and proving that his dismissal occurred for a reason violative of public policy. *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986). The defendant's reason for discharging the plaintiff must contravene public policy. *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 497–98, 523 A.2d 1356 (1987).

As we have stated earlier, it is the public policy of this state to protect the safety of the public at moving picture theatres. Whether the plaintiff was discharged because he complained about being required to work alone in violation of this policy and for taking precautions for the safety of the public was an issue for the trial court to determine from the evidence. We will not disturb reasonable findings and conclusions of that court.

The defendant also claims that the tort of wrongful discharge should not have been found to lie in this case because the plaintiff was employed under a term contract of fixed duration. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 211 n.1, 520 A.2d 217 (1987). The trial court found that the plaintiff's employment was subject to a contract between the defendant and the union. The contract was an exhibit which we have examined carefully. The contract ran from April 27, 1983 to April 26, 1985. The contract fixed the work week, hours of work, wages, vacation time and related matters for motion picture machine operators. The plaintiff was not a party to this contract, although he was a beneficiary of its terms. It did not address hirings or firings, save for a requirement that employees be or become union members. The plaintiff had been an employee of the defendant prior to the effective date of the contract, and there had been an earlier contract between the theatre owners and the union. The plaintiff was paid by the defendant and his term of employment was not fixed by the contract. We conclude that he was employed for an indefinite and not a fixed term and that he was an employee at will.

The defendant claims finally that the award of $40,000 as lost wages for a three-year period was excessive in light of the contract which was to expire one year and seven months after the termination of the plaintiff's employment. We have concluded, however,

that the term of the plaintiff's employment was not fixed by the contract. It is true that if a new contract were negotiated, the wages agreed upon might have differed. The experience of the past several years is sufficient to establish, however, that any new amount agreed upon would not be less than the amount fixed in the contract that was in force. Accordingly, we find no error in the award of lost wages for three years.

## II

### The Plaintiff's Cross Appeal

The plaintiff has cross appealed, claiming error in the granting of the defendant's motion for summary judgment on the second count of the amended complaint. In his second count, the plaintiff alleged that as a result of his having called the police and having informed the defendant of the inadequate staffing his employment was terminated in violation of General Statutes § 31-51m (b) and (c). Section 31-51m (b) provides in part: "No employer shall discharge . . . any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body . . ." Section 31-51m (c) provides in part: "Any employee who is discharged . . . in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action . . . ." The trial court granted the motion for summary judgment because the plaintiff had not alleged that he had called anyone to report a violation on the part of his employer, nor had he set forth facts showing that he reported his employer's alleged statutory violation to any public body. After the motion for summary judgment was granted, the plaintiff filed a motion to reargue and attached an affidavit from a member of the union, James Dubois. In his affidavit,

Dubois stated that the defendant's policy of requiring a projectionist to operate the theatre single-handedly was a violation of state regulations, that the plaintiff complained to the union in August of 1983, and that, in response to the complaint, "I raised the issue with the state in Meriden Connecticut." The motion to reargue was denied and the plaintiff reserved his right to appeal.

The plaintiff neither alleged nor showed that he had reported a violation of any state or federal law or regulation to any public body. The court did not err in granting the motion for summary judgment or in denying the motion to reargue the motion for summary judgment.

There is no error on the appeal or on the cross appeal.

In this opinion the other judges concurred.