[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendant, National Car Rental System, Inc. ("National"), has moved for summary judgment on both counts of the Amended Complaint dated July 28, 1995 ("Complaint") wherein the plaintiff, Joseph C. Ferrato ("Ferrato") alleges that he was wrongfully discharged from his employment by National in violation of public policy.[1]
The Complaint alleges that the plaintiff was employed as a Maintenance Manager by National at National's place of business at Bradley International Airport in Windsor Locks, Connecticut. As a condition of his continued employment and reward system Ferrato alleges that he was required by his superiors at National, including Steve Bondini and Robert Pellegrinelli, to submit false warranty claims to the manufacturers of the vehicles used in National's operations. On April 20, 1993 National terminated Ferrato's employment for falsification of company documents. Such discharge is alleged to violate the public policy against fraud and conversion or that established by Connecticut General Statutes § 53-119. In his Memorandum in Opposition to Summary Judgment Ferrato states, that the correct statutory reference in the Complaint is to § 53a-119, the statute which defines larceny.
Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v.Middlesex Ins. Co., 219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R.Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908
(1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 380, 381; Burnsv. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must CT Page 5204-G view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson, 176 Conn. 304, 309,407 A.2d 971 (1978); Strada v. Connecticut Newspapers, Inc.,193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batickv. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); New MilfordSavings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stam, 224 Conn. 524,530, 620 A.2d 99, cert. denied, 114 S.Ct. 176,126 L.Ed.2d 136 (1993); Connel v. Colwell, 214 Conn. 242, 246, 571 A.2d 116
(1991).
A cause of action in tort for wrongful discharge was first recognized in Connecticut in the case of Sheets v. Teddy'sFrosted Foods, Inc., 179 Conn. 471, 427 A.2d 385 (1980). The Court in Sheets recognized the rule that "contracts of permanent employment, or for an indefinite term, are terminable at will."Id. at p. 474. However, the Court held that "public policy imposes some limits on unbridled discretion to terminate the employment of someone hired at will." Id. at p. 476. In Sheets
the plaintiff, a quality control director and operations manager, complained to his employer that certain food products were mislabeled in violation of Connecticut General Statutes § 19-222, the Connecticut Uniform Food, Drug and Cosmetic Act. His employer ignored his complaints and his employment was terminated some seven months after he had made those complaints. In determining that the plaintiff had stated a cause of action, the Court recognized:
 The issue then becomes the familiar common-law problem of deciding where and how to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not. We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. We are, however, equally mindful that the myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers. 179 Conn. at p. 478. (Emphasis added.) CT Page 5204-H
The Court has recognized that "Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception." Morris v. HartfordCourant Co., 200 Conn. 676, 513 A.2d 66 (1986). Notwithstanding the "inherent vagueness" of the concept of public policy, cases subsequent to Sheets have made it clear that the in order to state a cause of action for wrongful termination, an employee must allege he or she was terminated because of an attempt to uphold or vindicate an important public policy. In Morris the Court held that an employer's termination of an employee for criminal conduct without fully investigating whether the employee was, in fact, guilty of such conduct did not violate an important public policy.
The Complaint does not claim that the plaintiff was fired for refusing to filed false warranty claims. On the contrary, it alleges that after requiring him to file false warranty claims, the employer fired him. Even if such allegations are taken as true, they do not state a cognizable claim for wrongful discharge.
The plaintiff has misconstrued the essence of the wrongful discharge cause of action, which allows judicial protection for employees "[w]hen their conduct as good citizens is punished by their employers." Sheets, supra, at 476. This concept is evident in the cases which have followed Sheets. In Atkins v. BridgeportHydraulic Co., 5 Conn. App. 643, 648, 501 A.2d 1223 (1985), the Court stated the public policy requirement in terms such that "permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." In Girgenti v. Cali-Con,Inc., 15 Conn. App. 130, 544 A.2d 655 (1988), the plaintiff alleged that his employment had been terminated after he notified police that an intruder was in the projection booth and turned on the theater lights, emptying the theater. The plaintiff also claimed that the employer was violating state labor laws. Holding that the plaintiff had failed to state a cause of action for or present sufficient evidence of wrongful discharge, the Court observed that "[t]he plaintiff neither alleged nor showed that he had reported a violation of any state or federal law or regulation to any public body." 15 Conn. App. at 140.
In Schmidt v. Yardney Electric Corporation, 4 Conn. App. 69,492 A.2d 512 (1985), the plaintiff alleged that his employer's president had ordered him to falsify an insurance claim, that he CT Page 5204-I did so, but then cooperated with company auditors by admitting the fraud when they questioned him about the insurance claim, and that he was terminated for such cooperation. In his Memorandum in Opposition to Summary Judgment the plaintiff likens his case to that of the plaintiff in Schmidt. That analogy is not valid.
Unlike the plaintiff in Schmidt, Ferrato does not allege that he was terminated for cooperating with an auditor or anyone else who investigated the false warranty claims. Moreover, at his deposition Ferrato testified that he had not assisted the GM auditor, had lied to him and had "concealed" from the auditor the fact that he had falsified claims. These facts are diametrically opposed to the allegations of Schmidt where the employee was terminated for assisting the auditor in uncovering fraud.
In his Supplemental Affidavit Ferrato states that "I was discharged to make it appear that I was the mastermind behind National's fraudulent warranty scheme," and "That I would now cooperate with Ford and Chrysler in uncovering the nature and extent u National's fraud." In his Memorandum Ferrato argues that he was terminated as part of some plan by his immediate superiors, Steve Bondini, Ross Piere and Jay Foley, to cover up the false warranty claim.
It is doubtful that the foregoing version of his termination advanced by Ferrato constitutes admissible evidence because 1) it is not alleged in the Complaint and 2) Ferrato bases the theory only on his "belief" without referring to any factual foundation for such belief. However, even if the court takes that version as true, it does not establish that the plaintiff was terminated for his attempted vindication of any public policy. Moreover, Ferrato's unsupported claim that his superiors, Bondini, Piere and Foley, terminated him as a scapegoat, is completely contradicted by Ferrato's own deposition testimony that he was not terminated by Bondini, Piere or Foley, but instead by Guy Freedman and Brian Calhoun because Ferrato refused to tell themwho else was involved in the false warranty claims.
If Ferrato had pleaded or presented evidence that his employment was terminated because he did cooperate with auditors or company executives to bring the false warranty scandal to light, he would have a valid wrongful discharge claim. However, there are no cases in which the courts have recognized that any important public policy requires the protection of employees who commit and conceal fraud during the course of their employment CT Page 5204-J but fail to attempt to disclose the fraud until after their termination.
For the foregoing reasons, the defendant's Motion for Summary Judgment is granted.
By the court,
Aurigemma, J.