[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION FOR SUMMARY JUDGMENT
This action for damages arises from the defendant's termination of the plaintiff's employment. Now before the court is the defendant's motion for summary judgment [#113].
On October 28, 1996, the plaintiff, Dolores Musielski, filed a seven-count substituted complaint against the defendant, Jewish Home for the Elderly of Fairfield County, Inc. Essentially, the plaintiff, who was formerly employed by the defendant as its Assistant Director of Food Services, claims that her discharge was unlawful. Count one alleges breach of implied contract. Count two also alleges breach of contract. Count three alleges intentional infliction of emotional distress. Count four alleges negligent infliction of emotional distress. Count five alleges breach of the implied covenant of good faith and fair dealing. Count six alleges promissory estoppel. Count seven alleges negligent misrepresentation.
On August 6, 1997, the defendant filed the instant motion for summary judgment together with a sixty-four page supporting memorandum and eight exhibits. The plaintiff has responded by filing an objection to the motion, a comparatively brief twenty-three page supporting memorandum, ten exhibits and an attachment.
"The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must CT Page 5747 substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotations marks omitted.) Maffucci v. RoyalPark Limited Partnership, 243 Conn. 552, 554, ___ A.2d ___
(1998); see Practice Book § 384, now Practice Book (1998 Rev.) § 17-49.
A. Counts One Two — Breach of Contract
The plaintiff alleges the her employment was governed by two employee manuals published by the defendant and distributed to the plaintiff. The plaintiff further alleges that these manuals constituted contracts of employment. She claims that these handbooks required that termination be based solely upon just cause and that employee discipline would be progressive, fair and equitable.
Count one alleges that the defendant breached its contract with the plaintiff by discharging the plaintiff without just cause. Count two alleges that the defendant breached its contract with the plaintiff by not providing fair and progressive discipline.
The defendant argues that it is entitled to summary judgment on counts one and two because the plaintiff was an at will employee, and therefore, the plaintiff cannot maintain breach of contract claims as a matter of law. In the alternative, the defendant contends that even assuming that the plaintiff was employed by the defendant pursuant to a contract, the defendant has not breached the contract because the plaintiff was discharged for good cause as permitted by the contract. The plaintiff responds that sufficient evidence exists to demonstrate that genuine issues of material fact exist with respect to whether a contract of employment existed and whether such contract was breached by the defendant.
Our Supreme Court has noted that "all employer-employee relationships not governed by express contracts involve some type of implied contract of employment. There cannot be any CT Page 5748 serious dispute that there is a bargain of some kind; otherwise, the employee would not be working." (Internal quotation marks omitted.) Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., 234 Conn. 1, 13, 662 A.2d 89 (1995). "Typically, an implied contract does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, [a]s a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will." (Internal quotation marks omitted.) Id., 14; see also Coehlo v. Posi-SealInternational, Inc., 208 Conn. 106, 118, 544 A.2d 170 (1988).
This general rule, however, can be modified by the agreement of the parties. Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., supra, 234 Conn. 15. However, in order to prove that the default rule of employment at will has been modified, the plaintiff must prove "by a fair preponderance of the evidence that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to [her] under which [she] could not be terminated without cause." Id. "[U]nder appropriate circumstances, the terms of an employment manual may give rise to an express or implied contract between employer and employee. . . . in the absence of definitive contractual language, the question of whether the parties intended the manual to constitute part of the contract is a question of fact to be determined by the trier of fact." Carbone v. Atlantic Richfield Co., 204 Conn. 460,471-72, 528 A.2d 1137 (1987); see Finley v. Aetna Life Casualty Co., 202 Conn. 190, 198-99, 520 A.2d 208 (1987), overruled on other grounds by Curry v. Burns, 225 Conn. 782,786, 626 A.2d 719 (1933).
The present case involves two employee handbooks. When the plaintiff began working for the defendant in 1983, the operative employee handbook provided that employees may be discharged for cause. (Plaintiff's Ex. 3, p. 11.) Furthermore, the 1983 handbook contained no disclaimer stating that the handbook did not constitute a contract of employment.
In 1991, the defendant promulgated a new employee handbook. The 1991 handbook provided that the defendant "may choose to counsel, warn, suspend or discharge employees depending on the nature of the offense and the employee's work record. However, the [defendant] reserves the right to determine the appropriate level of discipline up to and including termination." CT Page 5749 (Plaintiff's Ex. 1, p. 21.) The 1991 handbook provides a list of examples of improper employee conduct. The 1991 handbook also cautions that the list of improper conduct "does not cover all situations and is not intended to limit the [defendant's] right to discipline or terminate an employee for any other reason." (Plaintiff's Ex. 1, p. 21.) Significantly, the 1991 handbook also provides that "[t]his handbook is not intended to create a contract of employment. The [defendant] does not recognize any contract of employment unless it is reduced to writing and signed by an officer of the [defendant]. We follow the principle of employment at will. This means that either the employee or the [defendant] can end the employment relationship at any time." (Plaintiff's Ex. 1, p. 1.)
To be incorporated into an existing implied contract of employment, terms contained in a subsequently issued employee handbook must constitute an offer to modify the preexisting terms of employment by substituting the new terms for the old and the proposed modifications must be accepted by the employee.Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra,234 Conn. 14. "When an employer issues an employment manual that substantially interferes with an employee's legitimate expectations about the terms of employment . . . the employee's continued work after notice of those terms cannot be taken as conclusive evidence of the employee's consent to those terms." Id., 18. If an employee's continued work was taken as conclusive evidence of the employee's consent to such terms, "an employee whose preexisting contract provided that his or her employment could be terminated only for cause would have no way to insist on those contractual rights." Id., 19.
While the provisions of the 1991 handbook clearly indicate that the defendant considered the plaintiff an at will employee, the provisions of the 1983 handbook provide that the plaintiff could be discharged only for cause. Therefore a question of fact exists as to whether the plaintiff accepted the terms of employment contained in the 1991 handbook which differ from those set forth in the 1983 handbook. See Torosyan v.Boehringer Ingelheim Pharmaceuticals, Inc., supra, 234 Conn. 18-19. Furthermore, even assuming that the 1983 handbook constituted an implied contract requiring that the plaintiff could only be discharged for cause, whether such cause existed here requires resolution by the trier of fact. Accordingly, the defendant's motion for summary judgment as to counts one and two is denied. CT Page 5750
B. Count Three — Intentional Infliction of Emotional Distress
The defendant argues that it is entitled to summary judgment on count three on the ground that the facts of the case, taken in the light most favorable to the plaintiff, demonstrate no extreme and outrageous conduct by the defendant. The plaintiff responds that there exists sufficient evidence to show that the manner in which the plaintiff was discharged from her job caused her severe emotional distress.
In order to plead a cause of action for intentional infliction of emotional distress, the plaintiff must allege: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." DeLaurentis v. NewHaven, 220 Conn. 225, 266-67, 597 A.2d 807 (1991).
"Extreme and outrageous conduct is an essential element in the tort of intentional infliction of emotional distress. . . Mere insults, indignities, or annoyances that are not extreme and outrageous will not suffice." (Citations omitted.) Brown v.Ellis, 40 Conn. Sup. 165, 167, 484 A.2d 944 (1984). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . ." (Internal quotation marks omitted.) DeLaurentis v. New Haven, supra, 220 Conn. 267. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to the average member of the community would arouse resentment against the actor, and lead him to exclaim, Outrageous!" (Internal quotation marks omitted.) Mellaly v.Eastman Kodak Co., 42 Conn. Sup. 17, 20, 597 A.2d 846 (1991). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury." Id., 18. CT Page 5751
In support of count three, the plaintiff argues that the defendant's conduct was extreme and outrageous in that the defendant usurped her job duties little by little, (Plaintiff's Ex. 10, p. 274), and prevented the plaintiff from saying goodbye to the residents and staff of the defendant. (Plaintiff's Ex. 10.) Reasonable minds could not differ with respect to such conduct not being extreme and outrageous. Moreover, the evidence proffered by the plaintiff contains no evidence demonstrating that the defendant's conduct was extreme and outrageous. Accordingly, the defendant's motion for summary judgment as to count three is granted.
C. Count Four — Negligent Infliction of Emotional Distress
The defendant argues that it is entitled to summary judgment on count four because the facts, viewed in the light most favorable to the plaintiff, demonstrate that the defendant engaged in no unreasonable conduct. The plaintiff counters that there is sufficient evidence to show that the defendant's conduct in the termination process was unreasonable.
Our Supreme Court first recognized a cause of action for negligent infliction of emotional distress in Montinieri v.Southern New England Telephone Co., 175 Conn. 337, 345,398 A.2d 1180 (1978). "[I]n order to state such a claim, the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) Parsons v. United TechnologiesCorp. , 243 Conn. 66, 88, 700 A.2d 655 (1997); see Morris v.Hartford Courant Co., 200 Conn. 676, 683-84, 513 A.2d 66
(1986). "Accordingly, negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated does not transgress the bounds of socially tolerable behavior." (Citations omitted, internal quotation marks omitted.) Parsons v. United TechnologiesCorp. , supra, 243 Conn. 88-89. CT Page 5752
Here, viewing the evidence in the light most favorable to the plaintiff, that is, that the plaintiff may have been terminated without cause, the plaintiff's duties were withdrawn little by little, and the plaintiff was not allowed to say goodbye to the residents and staff of the defendant, such conduct would not present a genuine issue of material fact indicating that the defendant acted unreasonably in discharging the plaintiff. Parsons v. United TechnologiesCorp. , supra, 243 Conn. 88-89. Accordingly, the defendant's motion for summary judgment as to count four is granted.
D. Count Five — Breach of the Covenant of Good Faith and Fair Dealing
The defendant argues that it is entitled to summary judgment on count five because the plaintiff has failed to allege, or proffer evidence, that the defendant violated public policy by discharging the plaintiff. The plaintiff responds that because a question of material fact exists regarding the plaintiff's breach of contract claims alleged in counts one and two, a question of fact also exists regarding count five.
In Magnan v. Anaconda Industries, Inc., 193 Conn. 558,568-69, 479 A.2d 781 (1984), our Supreme Court held that the implied covenant of good faith and fair dealing applies to employment contracts. Nonetheless, the court determined that the covenant of good faith and fair dealing provides only limited protection to employees. Id., 569-572; see Doherty v.Sullivan, 29 Conn. App. 736, 742-43, 618 A.2d 56 (1992). TheMagnan court stated: "Although we endorse the applicability of the good faith and fair dealing principle to employment contracts, its essence is the fulfillment of the reasonable expectations of the parties. Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right. Like other contract provisions, which are unenforceable when violative of public policy, the right to discharge at will is subject to the same restriction. We see no reason presently, therefore, to enlarge the circumstances under which an at will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety . . . derived from some important violation of public policy. Sheets v. Teddy's frosted Foods, Inc.,
CT Page 5753 [179 Conn. 471, 477, 427 A.2d 385 (1980)].[1] Whether a claim resulting from such a discharge is framed in tort or in contract should make no difference with respect to the issue of liability." Id., 572; see Carbone v. Atlantic RichfieldCo., supra, 204 Conn. 470-71 ("[A]bsent a showing that the discharge involves an impropriety which contravenes some important public policy, an employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing").
Recently, our Supreme Court emphasized: "the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exception. In evaluating claims, [w]e look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy"Parsons v. United Technologies Corp. , supra, 243 Conn. 76-77. The Supreme Court went on to note its "adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one that is only to be involved when the reason for [the employee's] discharge . . . involves impropriety derived from some important violation of a public policy. . . . We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." (Citations omitted, internal quotation marks omitted.) Id., 79. "The line must be drawn between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not." Girgenti v.Cali-Con, Inc., 15 Conn. App. 130, 137, 544 A.2d 655 (1988), citing Sheets v. Teddy's Frosted Foods, Inc., supra,179 Conn. 477.
A cause of action in contract for violation of the covenant of good faith and fair dealing "is coterminous with, and extends no further than, a cause of action for wrongful discharge in tort." Battista v. United Illuminating Co.,10 Conn. App. 486, 495, 523 A.2d 1356, cert. denied,204 Conn. 802, 525 A.2d 1352 (1987). "[T]he employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy." Morris v. Hartford Courant Co., supra, 200 Conn. 679. "The defendant's reason for discharging CT Page 5754 the plaintiff must contravene public policy." Girgenti v.Cali-Con, Inc., supra, 15 Conn. App. 137. "[F]or a discharge to be actionable, there must be more than an incidental effect on public policy." Battista v. United Illuminating Co., supra, 10 Conn. App. 497. Accordingly, the plaintiff herein can only state a cause of action for breach of the covenant of good faith and fair dealing by sufficiently alleging that her dismissal occurred for a reason violating public policy.
Here, the plaintiff has neither alleged nor proffered any evidence that her dismissal violated any public policy. Accordingly, the defendant is entitled to judgment as a matter of law on the plaintiff's claim that the defendant violated the covenant of good faith and fair dealing. Therefore the defendant's motion for summary judgment as to count five is granted.
E. Count Six — Promissory Estoppel
The defendant argues that it is entitled to summary judgment on count six because it made no promise to the plaintiff and, even assuming it made such a promise, the plaintiff did not rely on such promise. The plaintiff responds that a question of material fact exists as to whether the defendant made a promise to the plaintiff that she then relied upon.
"Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Internal quotation marks omitted.) Chotkowski v. State, 240 Conn. 246,268, 690 A.2d 368 (1997).
The 1983 handbook provides that the plaintiff could be terminated only for cause. (Plaintiff's Ex. 3, p. 11.) The plaintiff claims that she was terminated without cause. The plaintiff has also provided evidence that she may have relied CT Page 5755 on the defendant's representations by leaving her previous place of employment and declining other job offers in order to work for the defendant. (Plaintiff's Ex. 10, pp. 120-21.) Therefore genuine issues of material fact exist regarding count six. Accordingly, the defendant's motion for summary judgment as to count six is denied.
F. Count Seven — Negligent Misrepresentation
"One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 575, 657 A.2d 212 (1995);D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 218, 520 A.2d 217 (1987). "[E]ven an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." Williams Ford Inc. v. Hartford CourantCo., supra, 232 Conn. 575.
The plaintiff has proffered evidence that she relied on the defendant's representations concerning the terms of her employment. (Plaintiff's Ex. 10, p. 121-22.) The plaintiff has also proffered evidence indicating that the defendant misrepresented the terms of her employment. (Plaintiff's Ex. 10.) Accordingly, a question of material fact exists, and therefore, the motion for summary judgment as to count seven is denied.
In summary the court grants the defendant's motion for summary judgment as to counts three, four and five and denies the motion for summary judgment as to counts one, two, six and seven.
DAVID W. SKOLNICK, JUDGE