GONZALO COTTO *v.* UNITED TECHNOLOGIES
CORPORATION, SIKORSKY
AIRCRAFT DIVISION
(AC 16670)

Hennessy, Dupont and Daly, Js.

Argued January 12—officially released May 12, 1998

*Karen Lee Torre,* for the appellant (plaintiff).

*Edward J. Dempsey,* for the appellee (defendant).

*Martin B. Margulies, Philip D. Tegeler* and *Rebecca Locketz* filed a brief for the Connecticut Civil Liberties Union Foundation as amicus curiae.

*Opinion*

DUPONT, J. The plaintiff appeals from the judgment of the trial court rendered in favor of the defendant on the granting of the defendant's motion to strike the

plaintiff's two count complaint.[1] The sole issue to be resolved is whether General Statutes § 31-51q[2] provides the plaintiff employee with a cause of action for monetary damages against the defendant, his private employer, after discharge from his employment resulting from an alleged exercise by the plaintiff of his federal or state constitutional right of free speech, when the speech took place at the site of the workplace. The defendant, in its motion to strike, claimed that (1) a cause of action based on § 31-51q is unavailable to an employee whose alleged expressive activity occurs exclusively on the private property of his employer, and (2) the plaintiff employee's words and actions, as alleged in his complaint, were not constitutionally protected.

The plaintiff alleged in his complaint that he was employed on a full-time basis by the defendant for approximately twelve years. The relevant portions of other allegations of the plaintiff's complaint are quoted as follows: "On or about April 22, 1991, the defendant, acting through [its] management personnel, distributed American flags to employees in the plaintiff's department and it was expected that all employees would

---

[1] The plaintiff does not challenge on appeal the trial court's granting of the defendant's motion to strike count two of the complaint.

[2] General Statutes § 31-51q provides: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer."

display American flags at their workstations.[3] The plaintiff declined to display the American flag and further gave his opinion on the propriety of coercing or exerting pressure on employees to display the American flag. As a result of the plaintiff's refusal to display the American flag and as a direct and proximate result of his comments with respect to displaying the flag, he was subjected to threats and harassment from his coworkers. Said threats and harassment were directed toward him by his coworkers with the full support and encouragement of the defendant. The plaintiff's refusal to display the American flag and his expression of his opinion regarding the company's policy that employees must display the American flag at their workstations were absolutely protected by the First Amendment of the United States Constitution and Article First of the Constitution of the State of Connecticut. Subsequent to the plaintiff's suspension from employment, he was permanently discharged from employment on or about May 16, 1992, on account of the plaintiff's aforementioned behavior and expression of opinion, all of which were constitutionally protected. The defendant's act of discharging the plaintiff from employment violated the plaintiff's rights pursuant to Connecticut General Statutes § 31-51q, as the plaintiff's refusal to display the American flag and his expression of opinion regarding the same did not substantially or materially interfere with his bona fide job performance or the working relationship between him and the defendant."

It is clear from the facts alleged in the complaint that the expressive conduct alleged by the plaintiff occurred exclusively in the workplace, on the private property of

---

[3] In response to the defendant's requests for admission, the plaintiff stated that the employees were called to the desk of a supervisor where they were handed small American flags with a letter from the company president thanking the employees for their efforts in supporting the United States during the Persian Gulf war.

the defendant. The trial court held that the "[p]laintiff's speech at his workplace is not protected by the first amendment to the United States constitution[4] or §§ 3, 4 or 14 of article first of the Connecticut constitution"[5] and, therefore, § 31-51q cannot afford relief.

The trial court determined that § 31-51q did not protect the plaintiff's expressive activities occurring on his employer's private property because such on-site activities are not "guaranteed by" either the United States constitution or the constitution of this state.[6] In so holding, the trial court primarily relied on *Cologne* v. *Westfarms Associates*, 192 Conn. 48, 469 A.2d 1201 (1984). In *Cologne*, the question was whether the rights of free speech and petition guaranteed by the Connecticut constitution[7] may be exercised on the private property of the defendants, which property consisted of a large regional shopping center.

---

[4] The first amendment to the United States constitution provides in part: "Congress shall make no law . . . abridging the freedom of speech . . . ."

[5] Article first, § 3, of the Connecticut constitution, titled "Right of religious liberty," is not involved in the allegations of the plaintiff's complaint.

Article first, § 4, of the Connecticut constitution provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

Article first, § 14, of the Connecticut constitution provides: "The citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress or grievances, or other proper purposes, by petition, address or remonstrance."

[6] The trial court did not hold, nor does the defendant claim, that § 31-51q does not provide a cause of action by an employee against a private employer for speech uttered away from the workplace, under some circumstances. Also, the defendant does not argue that a state legislature cannot, if it chooses to do so, protect some speech that would otherwise not be protected, such as speech that does not involve state action or speech that occurs on private property. The defendant argues instead that the plain words of the statute do not give to the plaintiff employee a cause of action for speech occurring at the private employer's workplace.

[7] Although the plaintiffs in *Cologne* relied exclusively on the state constitution for their claim, the court noted and it is well settled that "if the plaintiffs' asserted right to conduct their activities on the defendants' property depended entirely on federal constitutional provisions, they could not prevail." *Cologne* v. *Westfarms Associates*, supra, 192 Conn. 57; see also *Prune-*

No statute was involved in *Cologne* and no relationship, such as employer and employee, existed between the plaintiffs and the defendants, nor was any claim made that the speech was not otherwise constitutionally protected. The plaintiffs, relying on §§ 4 and 14 of article first of the state constitution, did not take the position that individuals may exercise their rights of free speech on any private property, but instead, limited their claim to speech activities occurring on private properties with a "uniquely public character." Id., 64. In analyzing this claim, the *Cologne* court reviewed the history of the adoption of the Connecticut bill of rights and found "no evidence of any intention to vest in those seeking to exercise such rights as free speech and petition the privilege of doing so upon property of others." Id., 62. Accordingly, the court concluded that the free speech and petition rights of the state constitution do not extend to expressive activities exercised on private property against the wishes of the owner, even where the private property is vested with a public character. Id., 65–66.

The present case involves the determination of an issue not yet decided by an appellate court of this state.[8] Unlike *Cologne*, which was based entirely on a constitutional analysis, we are here determining whether § 31-51q provides a cause of action, under the circumstances

*yard Shopping Center* v. *Robins*, 447 U.S. 74, 81, 100 S. Ct. 2035, 64 L. Ed. 2d 741 (1980) (federal constitutional protections to expressive activity do not extend to activity occurring on private property). *Pruneyard* held, however, that the California Supreme Court was correct in interpreting the California constitution to allow the protection of speech at a privately owned shopping center.

[8] General Statutes § 31-51q has been interpreted by the Connecticut Supreme Court to resolve other issues. In actions based on the statute, there must be a causal connection between the disciplinary action against an employee and the exercise of a constitutional right of the employee. *D'Angelo* v. *McGoldrick*, 239 Conn. 356, 685 A.2d 319 (1996). There is no right to a jury in an action brought by an employee pursuant to § 31-51q against a state employer, nor may such an action be dismissed on the ground of sovereign immunity. *Skinner* v. *Angliker*, 211 Conn. 370, 373, 559 A.2d 701 (1989).

alleged by the plaintiff, to an employee who is dis-charged for the exercise of an alleged constitutional right when, without the statute, no remedy or cause of action would be available.[9] In other words, the question is whether § 31-51q protects particular speech occurring on the private property of an employer when, pursuant to *Cologne*, such speech would not otherwise have been protected.

The defendant's motion to strike in the present case was based on two grounds. The defendant claimed, first, that the rights protected by § 31-51q do not apply when exercised on private property and, second, that even if they do apply, the plaintiff's words and actions were not constitutionally protected free speech. Attached to the defendant's motion to strike were a memorandum of law and a decision of arbitrators who had determined that the plaintiff was properly discharged. The plaintiff's cause of action pursuant to § 31-51q does not, nor could it, seek reinstatement of employment but, rather, seeks money damages.

"It is axiomatic that, in passing on a motion to strike based on a claim of failure to state a cause of action, we must take the facts alleged favorably to the pleader and view those facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them." *Schmidt* v. *Yardney Electric Corp.*, 4 Conn. App. 69, 74, 492 A.2d 512 (1985).

The trial court concluded that the plaintiff's speech was not protected because it occurred on private property. It did not consider the second ground for the defendant's motion, namely, that the particular words and actions of the plaintiff were not constitutionally

[9] Employment may be terminated at the will of the employer unless it comes within a statutory, contractual or decisional exception. *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474, 427 A.2d 385 (1980).

protected. The basis for the latter claim, according to the memorandum of law filed with the motion to strike, was that the speech did not involve a matter of public concern, but instead involved a matter concerning a condition of private employment. Although the trial court did not consider this second ground, we may do so because on appeal an appellate court may conduct a de novo review of an issue of law, such as the interpretation of a statute. *Squeglia* v. *Squeglia*, 234 Conn. 259, 262–63, 661 A.2d 1007 (1995); *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 395–96, 655 A.2d 759 (1995); see also *Emerick* v. *United Technologies Corp.*, 1996 WL680759 (2d Cir. 1996). In this case, both grounds for the defendant's motion to strike must be discussed.

Statutory analysis is a search for the intention of the legislature. "[W]e look to the words of the statute itself, to the legislative history . . . to the legislative policy it was designed to implement, and to its relationship to existing legislation . . . governing the same general subject matter." (Internal quotation marks omitted.) *Carriero* v. *Naugatuck*, 243 Conn. 747, 753, 707 A.2d 706 (1998).

We begin our analysis of whether a cause of action pursuant to § 31-51q has been alleged with the words of the statute. First, a private employer is placed in the same category as a state employer because of the words "[a]*ny* employer, including the state . . . ." (Emphasis added.) General Statutes § 31-51q. The statute next prohibits the discharge of an employee who exercises those rights that are guaranteed by particular sections of the state and federal constitutions, provided that the exercise of those rights do not interfere with the employee's bona fide job performance or the working relationship between the employee and the employer.[10] The question

---

[10] The allegations of the plaintiff's complaint that his actions and expression of opinion did not interfere with his working relationship with the defendant is contradicted by his allegations that he was subjected to threats

is whether the words of the statute were intended to extend constitutional protections of speech to the workplace. Nothing in the statute's legislative history answers that question, and the statute itself is silent. It is instructive, however, to review related state legislation governing the same general subject matter.

A state may adopt, in its own constitution, individual liberties more expansive than those conferred by the federal constitution and a state statute is, for that purpose, in the same category as a state constitution. *Pruneyard Shopping Center* v. *Robins*, 447 U.S. 74, 79, 81, 100 S. Ct. 2035, 64 L. Ed. 2d 741 (1980). Thus, the legislature, if it so chooses, may enlarge a constitutional right; see *Cologne* v. *Westfarms Associates*, supra, 192 Conn. 72 (*Peters, J.*, dissenting); and may enact a statute to protect speech or expressive activity beyond that guaranteed by either the state or federal constitutions; *Pruneyard Shopping Center* v. *Robins*, supra, 78, 81, and, until such time as that legislation is successfully attacked as unconstitutional or is repealed, the subject activity of the legislation is protected.

For example, the legislature has enacted other statutes to protect employee speech or activity that would not otherwise be protected by the federal or state constitutions. These statutes govern situations where there is no state action and where the activity relates to a private employer. Such statutes include General Statutes § 2-3a, which prohibits retaliatory action by a private employer against an employee who runs for or serves in the state legislature; General Statutes § 31-51m, which prohibits retaliatory action by a private employer against an employee who reports a violation or suspected violation of laws or regulations (employee

---

and harassment from his coworkers, which were directed toward him with the full support and encouragement of the defendant. It is necessarily implied by his allegations that his actions and expressions of opinion *did* interfere with his relationship with his employer.

"whistle-blowing" protection); General Statutes §§ 31-40k and 31-40o, which prohibit retaliatory action by a private employer against an employee for seeking information about toxic substances used at the workplace; General Statutes § 31-48b, which provides criminal sanctions against a private employer who records or monitors activities of employees in areas designed for the personal health or comfort of the employees, or in areas for the safeguarding of employee possessions such as restrooms, lockers and lounges; General Statutes § 31-51, which provides for a fine against a private employer who acts to prevent an employee from securing employment elsewhere; General Statutes § 31-51g, which provides for a fine against a private employer for requiring an employee to take a polygraph test; General Statutes §§ 31-104 and 31-105, which make it an unfair labor practice for private employers to prevent employees from bargaining collectively; General Statutes § 31-290a, which prevents private employers from using retaliatory measures against an employee who files a claim for workers' compensation benefits; General Statutes § 31-379, which prevents private employers from using retaliatory measures against an employee who files a complaint concerning a violation of the Occupational Safety and Health Act; General Statutes § 51-247a, which prohibits retaliatory measures by a private employer against an employee for responding to a summons to act as a juror or for serving as a juror; General Statutes § 52-361a (j), which prohibits a private employer from using retaliatory measures against an employee because of a wage execution; General Statutes § 53-303e (b), which prohibits a private employer from taking retaliatory measures against an employee for not working on his or her Sabbath because of religious observance; General Statutes § 27-33, which prohibits retaliatory action by a private employer against an employee who absents himself from his work

duties while engaging in military or naval duty; General Statutes § 28-17, which prohibits the discharge of an employee because of membership in an organization engaged in civil preparedness or because of eligibility for induction into the armed services of the United States; and General Statutes § 9-365, which provides for a fine of "[a]ny person" who threatens a person in his employ or who discharges an employee because of any vote of the employee at any election.

Clearly, some of the protected activities described in these statutes involve speech or expressive activity that either of necessity or in all probability will occur at the work site of a private employer and involve prohibition of speech unrelated to state action.

We conclude that § 31-51q applies to some activities and speech that occur at the workplace because there are no words in the statute limiting the place at which the constitutionally protected activity occurs, there is no prohibition that prevents a legislature from protecting employee speech wherever it occurs and other legislation governing the same general subject matter includes speech occurring at the workplace. The real question in this case, however, is not governed by *where* the activity occurred but of *what* the activity consisted. Section 31-51q protects only that activity guaranteed safe from private employer interference by either certain sections of our constitution or by the federal constitution. If the rights exercised by the employee do not fall into the specified constitutional category, the statute cannot apply. Not all speech is guaranteed to be "free." "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic." *Schenck* v. *United States*, 249 U.S. 47, 52, 39 S. Ct. 247, 63 L. Ed. 470 (1919). It is the combination, in this case, of where the speech occurred at the workplace and its particular content that determines if the speech is protected by the statute.

In deciding whether the allegations of the plaintiff's complaint state a cause of action for the deprivation of a constitutionally protected right, it is instructive to review federal and state cases arising under 42 U.S.C. § 1983 because § 31-51q is analogous. See *D'Angelo* v. *McGoldrick*, 239 Conn. 356, 367, 685 A.2d 319 (1996) (*Berdon, J.,* dissenting). If an employee's activity or speech can be the basis of a discharge from employment, without violating 42 U.S.C. § 1983, when the federal, state or municipal government is the employer, then it is logical to conclude that an employee's activity can also be the basis of a discharge by a private employer, without violating § 31-51q. Three cases, two federal and one state, are relevant to this inquiry.

Conduct at a governmental employer's workplace is not constitutionally protected unless the expressive activity concerns a matter of public, social or other concern to the country. *Connick* v. *Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). In *Connick*, a state assistant district attorney circulated a questionnaire at work among fifteen other assistant district attorneys, creating a "mini-insurrection" at the office of the district attorney. After the assistant district attorney was discharged, she brought a § 1983 action, alleging that she had been wrongfully terminated because the discharge was due to the exercise of her constitutionally protected right of free speech. Speech on matters of public interest is protected, whereas other speech may not be protected. The *Connick* court reviewed a number of prior United States Supreme Court decisions that concerned the line to be drawn between nonconstitutional speech involving employment conditions and practices and constitutional speech involving public issues. Identifying the difference requires a case-by-case analysis, and the court refused to lay down a general standard against which speech may be judged. Such a review of each case requires an evaluation of the

manner, time and place involved in the expressive activity, as well as an analysis of the content of the expression itself. The *Connick* court held that while the questionnaire may have touched on matters of public concern in a limited sense, the questionnaire was more accurately characterized as an employee grievance concerning office policy. Id., 154. "The limited First Amendment interest involved . . . does not require that [the district attorney] tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships. [The] discharge therefore did not offend the First Amendment." Id.

To be protected by the first amendment, "the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause" to employee relationships. *Waters* v. *Churchill*, 511 U.S. 661, 668, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994). Restrictions on employee-employer speech are more justified than restrictions on the speech of the public at large. Id., 672. Both *Connick* and *Waters* were § 1983 cases, and both involved expressive activity at the workplace.

In a § 1983 case brought in the Connecticut state courts, a police officer sought damages for violations of his federal civil rights, namely, his constitutional rights to freedom of speech and equal protection of the law. *Schnabel* v. *Tyler*, 230 Conn. 735, 748, 646 A.2d 152 (1994). A public employer violates the first amendment if it takes an adverse employment action against an employee to punish the employee for his "constitutionally protected speech of public concern." Id., 748. An employee has an interest in commenting on matters of public concern, and an employer has an interest in regulating some of the speech of its employees. Whether speech may fairly be characterized as constituting

speech on a matter of public concern must be determined by the content, form and context of the speech. There is a constitutionally permissible justification for an employee's discharge if the speech is not of public concern.

An example of an issue of public concern is one involving the expenditure of public funds; *Girgenti* v. *Cali-Con, Inc.*, 15 Conn. App. 130, 137–38, 544 A.2d 655 (1988); or involving the safety of the public. *Pickering* v. *Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). In the present case, the plaintiff alleged that "it was expected" that all employees display American flags at their workstations, and that he declined to do so and gave an opinion on the propriety of coercing or exerting pressure on employees to do so. It can fairly be inferred from these allegations and other allegations of his complaint that his opinion was that employees should not be pressured into displaying the flag, and that this opinion caused a disturbance among his coworkers during working hours at the workstations of the employees.

The issue of whether the employer should have "expected" the plaintiff to display a flag may be the subject of a grievance involving a condition of employment, but it is not a matter of public interest. An employee's right as a citizen to participate in discussions concerning matters of public importance on or off the work site of the employer cannot be converted into a right guaranteed by the federal or state constitution to express a grievance about the working conditions of employment.[11] There is a difference between allegations regarding a dispute between an employer and employee over working conditions, and allegations regarding a

---

[11] State statutes, such as General Statutes § 31-51m, the "whistle-blower" protection statute, as opposed to the state constitution, may give an employee such a limited right.

disagreement about matters of public concern. *Girgenti v. Cali-Con, Inc.*, supra, 15 Conn. App. 137.

If the plaintiff had been an employee of the federal government or of the state government, and if § 1983 had been applied, the plaintiff's expression at the workplace would not have been constitutionally protected, and we here hold that on the facts as alleged, the plaintiff has no cause of action.

The judgment is affirmed.

In this opinion DALY, J., concurred.

HENNESSY, J. concurring. While I agree with the result reached by the majority, I disagree with the conclusion that General Statutes § 31-51q is applicable to speech on private property. I believe that the trial court properly held that § 31-51q does not apply and dismissed the plaintiff's complaint. Therefore, I respectfully concur in the judgment.

"[I]t is fundamental that the First Amendment [to the United States constitution] prohibits governmental infringement on the right of free speech. Similarly, the Fourteenth Amendment [to the United States constitution], which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities. *Civil Rights Cases*, 109 U.S. 3, 11 [3 S. Ct. 18, 27 L. Ed. 835] (1883); *Shelley* v. *Kraemer*, 334 U.S. 1, 13 [68 S. Ct. 836, 92 L. Ed. 1161] (1948)." *Rendell-Baker* v. *Kohn*, 457 U.S. 830, 837–38, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982). In interpreting the state constitutional free speech provision in the area of private speech on private property, our Supreme Court has refused to find any meaningful distinction between the federal and state constitutional free speech provisions. See *Dydyn* v. *Dept. of Liquor Control*, 12 Conn. App. 455, 463, 531 A.2d 170, cert. denied, 205 Conn. 812, 532 A.2d 586

(1987), cert. denied, 485 U.S. 977, 108 S. Ct. 1272, 99 L. Ed. 2d 483 (1988). In the present case, it is undisputed that the speech occurred on private property and is, therefore, not speech protected by the federal or state constitution.[1] See *Cologne* v. *Westfarms Associates*, 192 Conn. 48, 62–63, 469 A.2d 1201 (1984).

Statutory provisions or common law, however, "may in some situations extend protection or provide redress against a private corporation or person who seeks to abridge the free expression of others." *Hudgens* v. *National Labor Relations Board*, 424 U.S. 507, 513, 96 S. Ct. 1029, 47 L. Ed. 2d 196 (1976). We must first determine, therefore, whether the legislature enacted § 31-51q to protect speech that occurs on a private employer's property.

Section 31-51q provides in relevant part that "[a]ny employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of *rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state . . . .*" (Emphasis added.) "[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. . . . *Dos Santos* v. *F. D. Rich Construction Co.*, 233 Conn. 14, 20, 658 A.2d 83 (1995). We look to the legislative history of a statute only if it is ambiguous. *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 187, 592 A.2d 912 (1991). A statute does not become ambiguous because the parties argue its meaning differently. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 63, 578 A.2d 1054 (1990). The legislative intent is to be found, not in what the legislature

---

[1] The parties have made no claim of state action.

intended to say, but in the meaning of what it did say. *Lees* v. *Middlesex Ins. Co.*, 219 Conn. 644, 652, 594 A.2d 952 (1991). We must construe a statute without reference to whether we feel that it might be improved by adding to it or interpreting it differently. See *Emergency Medical Services Commission* v. *Freedom Of Information Commission*, 19 Conn. App. 352, 355, 561 A.2d 981 (1989). It is our duty to apply the law, not to make it. *Murray* v. *Lopes*, 205 Conn. 27, 34, 529 A.2d 1302 (1987). . . . *Commissioner of Administrative Services* v. *Gerace*, 40 Conn. App. 829, 832–33, 673 A.2d 1172 [1996], appeal dismissed, 239 Conn. 791, 686 A.2d 993 (1997) (certification improvidently granted)." (Internal quotation marks omitted.) *State* v. *Gordon*, 45 Conn. App. 490, 497–98, 696 A.2d 1034, cert. granted, 243 Conn. 911, 701 A.2d 336 (1997).

The language used by the legislature in § 31-51q, namely, "rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state," is plain and unambiguous. We need not, therefore, turn to the legislative history of the statute in order to discern legislative intent. The intent clearly manifests itself in the language used. The statute applies only to violations of constitutional rights. The right to free speech on private property is not guaranteed by any of the enumerated constitutional provisions, either state or federal. Any purported restriction on the plaintiff's free speech, is not a violation of any *constitutionally protected* right to free speech and, therefore, § 31-51q does not apply. Accordingly, I would affirm the judgment of the trial court.