**Aurice BARLOW, Plaintiff,**

**v.**

**State of CONNECTICUT, Department of Public Health and Elizabeth Weinstein, Defendants.**

**No. 3:00–CV–1983(EBB).**

United States District Court, D. Connecticut.

May 5, 2004.

Aurice Barlow, Hartford, CT, pro se.

Cynthia Renee Jennings, The Barrister Law Group, Bridgeport, CT, for Plaintiff.

Gary S. Starr, Shipman & Goodwin, Hartford, CT, Stephen M. Sedor, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE

ELLEN B. BURNS, Senior District Judge.

### INTRODUCTION

Plaintiff Aurice Barlow, ("Barlow" or "plaintiff") brings this employment discrimination action against the State of Connecticut, Department of Public Health and Elizabeth Weinstein, an employee of the Department of Public Health, ("Defendants" or "DPH" or "Weinstein") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983, and Conn. Gen.Stat. § 31–51q. Defendants now move pursuant to Fed.R.Civ.P. 56 for summary judgment on all claims [Dkt. No. 46] and move to strike certain exhibits and statements offered in support of Plaintiff's Memorandum of Law in Opposition to Defendants' Summary Judgment [Dkt. No 62]. For the reasons detailed below, defendants' motion for summary judgment is granted.

### BACKGROUND

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are culled from the parties' Local Rule 56(a) Statements, affidavits, and the exhibits attached to their respective memoranda. The court notes that this case involves numerous instances of alleged discriminatory conduct and retaliatory action over several years. In this background, the court provides a brief overview of the facts taken in the light most favorable to the plaintiff, and more specific circumstances are raised in the Ruling's substantive discussion.

Plaintiff began working for the State of Connecticut Department of Public Health ("DPH") in 1984 as a clerk-typist. In April of 1986, Barlow was transferred to the Preventable Diseases Division, where she performed clerical and administrative duties in the AIDS Division. Her jobs with the Aids Division included answering phones, typing, word processing, filing, and disseminating informational pamphlets. From 1986 to January 1997 Anne McLendon ("McLendon") acted as Barlow's supervisor. While under McLendon's supervision, McLendon prepared or reviewed Barlow's Performance Appraisals from 1988 to 1995. While Barlow received an overall rating of good or very good on each of these evaluations, they each also had negative comments regarding Barlow's workplace performance. For example, on plaintiff's 1988 review, while she received several good and very good ratings, McLendon noted in the comments section that plaintiff "when under stress, Aurice often loses her temper and uses language and behaviors that are inappropriate." In September of 1993, as a result of incidents at work, McLendon and Beth Weinstein, another supervisor, gave plaintiff a memorandum entitled "Workplace

Behavior Expectations," which outlined areas plaintiff needed improvement. The letter warned "if you do not achieve and maintain consistent compliance with the behavior expectations described in the attached document, an official letter will be put in you permanent file. The next step will be formal progressive disciplinary action." (Def.Exh. 5). Barlow's 1994 evaluation included an overall rating of good, noting several significant accomplishments of plaintiff. However, it also included recommendations such as the need to decrease typing areas, work on maintaining an even temper under stress, and to develop better conflict negotiation skills.

In the early to mid 1990's, the AIDS Division began to expand its operations and programs, prompting the Department to hire an independent contractor, Dunne Kimmel, and Fein ("DKF") to take over many aspects of the operation of the AIDS Division. Many of Barlow's job duties changed at this time. On March 31, 1996, the DPH moved from 21 Grand Street to 410 Capitol Avenue in Hartford.

In or around April or May of 1996, after the DPH moved to 410 Capitol Avenue, Barlow filed a "whistleblower"[1] complaint alleging that her supervisors had improperly given state owned furniture to DKF during the move. Plaintiff asserts that many of her job duties were taken away as a result of her complaint. While Barlow originally testified in her deposition that her job duties were taken away "all at once" when she "was working at 21 Grand Street." (Deposition of Barlow at 39–40), she later stated in the same deposition, that "all" of her job duties were not taken away until after she moved to 410 Capital

Avenue. She explained that "some of my duties were taken away but they weren't taken away all at one time...They were taken away slowly but surely." (*Id.* At 50).

On April 18 1996, Barlow received a letter of warning as a result of two complaints by co-workers reporting incidents where Barlow became disruptive and inappropriate. One of Barlow's co-workers wrote a letter of complaint stating that after Barlow had trouble with the copy machine, she shouted "unprofessional remarks like 'some people have a lot of nerve' and swearing. Not only was what she said inappropriate and unprofessional, but her loud voice and hostile manner were upsetting to me and the staff in the immediate area." (Def.Exh. 7). In her deposition, plaintiff denied these incidents occurred in the manner stated by her co-workers, and insisted they were "coerced" into lying about the incidents in order to harass plaintiff. (Plaintiff's Dep. at 236 – 37).

On August 6, 1996, two of Barlow's co-workers complained about plaintiff's inappropriate use of the telephone, specifically regarding the fact that plaintiff spoke in a loud and disruptive manner. Plaintiff denies these incident's occurred as reported by her co-workers, but also asserts that she has hearing loss which causes her to speak loudly. After meeting with the CHRO on August 8, 1996, Barlow filed a complaint with the CHRO on August 12 alleging that she was "given poor evaluations, demoted, retaliated against, harassed and discriminated against" due to her race (black) religion (Catholic), marital status (single parent) and having previous-

---

1. Defendants' challenge plaintiff's characterization of her complaint regarding the furniture as a whistleblower action, because it was an after-the-fact complaint about an incident unlikely to be repeated, but this court will continue to refer to this incident as the whistleblower complaint, as defendants chose to do in their moving papers, for ease of identification.

ly opposed discriminatory practices. (Pl. Exh. 8). Plaintiff stated in her affidavit of illegal discriminatory practice that McLendon had been harassing her since 1988 by giving her religious literature, and plaintiff had complained about McLendon's conduct to her union representative, affirmative action, and the Personnel department. and limiting her job duties. In plaintiff's affidavit, she stated that she in support of her Barlow's complaint was date stamped on August 26, 1996, indicating the CHRO received the complaint on that day. On August 9, 1996, Weinstein gave Barlow a "letter of counseling" regarding her behavior in the office. Barlow asserts that Weinstein knew she was about to file a complaint, and reprimanded Barlow in retaliation. Barlow's CHRO complaint did not make any allegations against Beth Weinstein regarding retaliation for having filed the whistle-blower complaint.

On August 22, 1996, Barlow received another letter of counseling regarding her excessive absences and tardiness. On the same day, Barlow was informed she was not allowed to play in a DPH charity basketball tournament that day. Barlow collapsed at work after receiving a memo that she was not allowed to play in the basketball game, and had a "psychological breakdown" as a result of these disciplinary actions. (Barlow Dep. at 174–6). After the incidents on August 22, 1996, Barlow took a voluntary leave of absence while the CHRO Complaint was pending.

While on leave, plaintiff did not receive her paychecks. Barlow was informed by Barbara Schiffer that her paychecks were intentionally withheld from her while she was on medical leave to force her to come back to work. However, Barlow conceded in her deposition that Schiffer has "changed her story" and later told Barlow that her checks were left in the office rather than sent to her home due to an

"oversight". (*Id.* 213–16). Plaintiff filed a complaint with the U.S. Department of Labor regarding the DPH's failure to send her paychecks home on January 26, 1998. Plaintiff also received phone calls from Tom Weirbonics, Tom Carson and Beth Weinstein during her leave of absence. In her complaint, plaintiff alleges these phone calls were "harassing." However, in her deposition, plaintiff explained that Weirbonics was "very nice" when he called, and that Carson called to inquire as to whether she was interested in a transfer out of the AIDS Department. Weinstein inquired about when Barlow intended to return to work from her leave. (Barlow Dep. At 193–6).

On October 7, 1996, the CHRO dismissed plaintiff's complaint, finding no reasonable cause to believe that a discriminatory practice had occurred. Barlow did not file any subsequent civil action upon the CHRO's dismissal of her complaint. Barlow returned to work January 3, 1997. Upon her return, Barlow had several more confrontational incidents with her supervisors and co-workers. On July 9, 1997, after being told by a co-worker to lower her voice while on the phone, Barlow responded by saying "fuck you". (Affidavit of·T. Carr). Barlow denies many of the incidents, or asserts that they occurred because she was picked on and harassed in retaliation for her whistle-blower and CHRO complaints. Plaintiff's 1996, 1997, and 1998 performance evaluations rated Barlow unsatisfactory. Pursuant to the Collective Bargaining Agreement between Barlow's Union and the State, the DPH could have terminated Barlow after she received her second unsatisfactory appraisal. In 1998, the DPH informed plaintiff they were considering her termination. Plaintiff was advised to meet with her Union representative in order to prepare a response to the charges underlying her termination. However, Barlow informed

the DPH staff on the day of the scheduled meeting that she would not attend. Barlow also rejected a "Last Chance Agreement" that DPH proposed, which would have allowed her to keep her job with the condition that any further disruptive conduct would result in her immediate termination.

Barlow was terminated on October 26, 1998, upon which she grieved her termination under the terms of her collective bargaining agreement. The DPH and Barlow's Union selected an arbitrator, Mark Grossman, to arbitrate Barlow's case. Arbitrator Grossman rejected Barlow's retaliation claim and ruled that the DPH had proven that Barlow was terminated for just cause. Plaintiff subsequently filed the pending claims against defendants DPH and Beth Weinstein.

### Analysis

I. Motion to Strike

 A. Plaintiff's Exhibits in Support of her Memorandum in Opposition to Summary Judgment

■ As an initial matter, the defendants move to strike several exhibits attached to the Plaintiff's Opposition to Defendants' Motion for Summary Judgment [Dkt. Nos. 54, 55] as improper. The principles concerning admissibility of evidence do not change on a motion for summary judgment. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997); *Newport Elecs. v. Newport Corp.*, 157 F.Supp.2d 202, 208 (D.Conn.2001). Accordingly, a motion to strike is appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay, conclusory statements, are incomplete, or have not been properly authenticated. *See, e.g. Hollander v. American Cyanamid Co.*, 999 F.Supp. 252, 255–56 (D.Conn. 1998); *Dedyo v. Baker Engineering New York, Inc.*, 1998 U.S. Dist. LEXIS 132, 1998 WL 9376 at *4 (S.D.N.Y.1998).

1. *Exhibits Without Proper Authentication*

■ The documents submitted in opposition to a summary judgment motion must be properly authenticated in order to be considered by the court at summary judgment stage. *Dedyo*, 1998 U.S. Dist. LEXIS 132 at *12–13, 1998 WL 9376 at *4–5. *See also*, 11 James Wm. Moore et al., Moore's Federal Practice P 56.14[4][a] (3d ed.1997). It is irrelevant that the documents can be properly authenticated if introduced at trial through a witness, if they have not been properly authenticated when submitted in support or opposition to summary judgment. Accordingly, because plaintiff failed to authenticate Exhibits 10, 12, 16, 30, 39, 45, and 46 submitted in opposition to defendants' motion for summary judgment, they are struck from the record.[2]

2. *Incomplete Exhibits*

Plaintiff's Exhibit 1C, a job description, and Exhibit 49, the last page of a multiple page workplace survey are incomplete as plaintiff produces only one page of these multiple page documents. Plaintiff has also failed to authenticate these documents. Accordingly, they are struck from the record.

3. *Exhibit 6: Doctor's Report*

■ Defendants next seek to strike Exhibit 6 from the record, a letter from a doctor regarding a hearing exam given to plaintiff, which states the results of her examination and recommended treatment. Courts can consider medical reports on

**2.** Even considering these documents, however, this court still finds plaintiff has failed to produce any evidence of retaliatory conduct by the DPH.

summary judgment on the assumption that the physicians who originated the report will be available to testify at trial if necessary. *Jones v. City of Hartford,* 285 F.Supp.2d 174, 185 (D.Conn.2003). As a result, the motion to strike Plaintiff's Exhibit 6B is denied.

### 4. *Exhibit 8: CHRO's Reasonable Cause Investigation Report*

■ The defendants also moved to strike plaintiff's Exhibit 8, the second reasonable cause determination by the CHRO filed after plaintiff was terminated. Factual findings in public records, which would include "conclusions or opinions" based on those facts, made after an investigation authorized by legal authority are presumptively admissible absent "information or other circumstances [that] indicate lack of trustworthiness." *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 143 (2d Cir.2000) (citing Fed.R.Evid. 803(8)(C)). "Findings of the EEOC or equivalent state agencies" fall within the ambit of the public records exception to hearsay. *Paolitto v. John Brown E. & C., Inc.,* 151 F.3d 60, 64 (2d Cir.1998).

■ The party seeking to strike public records has the burden to establish lack of trustworthiness. *Bridgeway,* 201 F.3d at 143 (citing *Ariza v. City of New York,* 139 F.3d 132, 134 (2d Cir.1998)); see Fed.R.Evid. 803(8)(C) advisory committee's note ("Hence the rule ... assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present."). In assessing trustworthiness, the court considers (1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which conducted; [and] (4) [any motive of the investigator inconsistent with accuracy]. Fed.R.Evid. 803(8)(C) advisory committee's note. The court may consider other factors, includ-

ing the finality of the report or record as an official finding. *Gentile v. County of Suffolk,* 129 F.R.D. 435, 458 (E.D.N.Y. 1990) (citing *United Air Lines, Inc. v. Austin Travel Corp.,* 867 F.2d 737, 742–43 (2d Cir.1989)). Ultimately, the court has the discretion to determine "whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission." *City of New York v. Pullman Inc.,* 662 F.2d 910, 914 (2d Cir.1981), and ultimately whether to exclude an agency's Reasonable Cause finding and any evidence underlying that finding. *EEOC v. Regency Architectural Metals Corp.,* 896 F.Supp. 260, 263 (D.Conn.1995).

■ In this case, the CHRO document is a preliminary investigation into whether discrimination or retaliatory conduct against plaintiff could have occurred. (Pl. Exh. 8). Upon review of the findings and determinations by the CHRO, the court finds this report unreliable. While the investigator, Yvonne Duncan, found reasonable cause that plaintiff had been subject to retaliation, her conclusions are based largely on unreliable hearsay, and what plaintiff stated. It is clear that Duncan largely disregarded the testimony of the DPH officials, and significant evidence that provided support for the finding that plaintiff was terminated for legitimate reasons having nothing to do with her whistleblower complaint. Because this court has all the same evidence before it that investigator Duncan considered in making her reasonable cause determination, this court finds there is little probative value in relying on Duncan's conclusions and therefore strikes her reasonable cause finding from the record.

### 5. *Exhibits 41, 50: Unsworn Statements of Coworkers*

■ Defendants seek to strike two statements submitted in support of plain-

tiff's opposition to the motion for summary judgment because the statements were improperly certified and not based on personal knowledge in violation of the requirements of 28 U.S.C. § 1746 and Fed. R.Civ.P. 56(e).

Rule 56(e) provides that a motion for summary judgment may be accompanied by sworn affidavits setting forth admissible facts based on personal knowledge. 28 U.S.C. § 1746 provides that, whenever a rule requires a matter to be supported by sworn affidavit, the matter may be supported instead by an unsworn, written declaration or statement subscribed as true under penalty of perjury, and dated. Here, however, plaintiff offers statements by co-workers that are in the form of a letter, neither sworn or dated, nor ending with an affirmation suggesting the written statement is true. Further, neither of these letters assert that they are based on personal knowledge, as required to be admissible in support of this motion for summary judgment. *Adickes v. S.H. Kress & Co.*, 398.U.S. 144, 158, n. 17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). ("Unsworn statements are not sufficient to defeat a motion for summary judgment."); *Beyah v. Coughlin*, 789 F.2d 986, 989–990 (2d Cir.1986)(reversing summary judgment which relied on sworn testimony that was not based on personal knowledge). Because Exhibits 49 and 50 do not qualify as evidentiary proof in admissible form, these exhibits will be struck from the record and will not be considered by this court in its ruling on summary judgment.

**B. Plaintiff's Local Rule 56(a)(2) Statement**

 Defendants have also moved to strike several statements in plaintiff's Local Rule 56(a)(2) Statement on the grounds that the statements are unsupported by the record, are legal conclusions, or are speculative statements or improper generalizations. *See* Defendants' Motion to Strike [Doc. # 62–1]. This court agrees that plaintiff's 56(a)(2) Statement includes conclusory allegations, many of which are not supported by the record. In deciding a summary judgment motion, however, it is necessary to look to the record evidence, and inappropriate to rely solely on the 56(a)(2) statement. *See Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir. 2003). As the Court has relied only on the underlying evidence, not defendants' 56(a)(2) statement, plaintiff's motion is denied as moot.

**II. Summary Judgment**

**A. Standard for Summary Judgment**

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes. Birth Defects Foundation*, 51 F.3d 14, 18 (2d. Cir.1995)(movant's burden satisfied if it can point to an absence of

evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117(1991). However, if the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). In sum, summary judgment is proper where no reasonable jury "could find by a preponderance of the evidence" for the nonmoving party. See *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the nonmoving party. *See Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. 1348; *Adickes*, 398 U.S. at 158–59, 90 S.Ct. 1598. Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to support or rebut a summary judgment mo-tion. Fed.R.Civ.P. 56(e). Supporting and opposing affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. *See Id.* Unsworn statements, letters addressed to litigants, and affidavits composed of hearsay and non-expert opinion evidence do not satisfy Rule 56(e) and must be disregarded. *See Adickes*, 398 U.S. at 158 n. 17, 90 S.Ct. 1598. In addition, general averments or conclusory allegations of an affidavit do not create specific factual disputes. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

### B. *Standard Applied: Title VII Retaliation Claim*

Title VII prohibits retaliation against employees who exercise rights protected by the statute. See 42 U.S.C. § 2000e–3(a). The Court analyzes retaliation claims under the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995). Under the first tier of the McDonnell Douglas test, the plaintiff must establish a prima facie case of retaliation by showing that: (1) she engaged in a protected activity under Title VII; (2) the employer was aware of the protected activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Galdieri–Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir.1998); *Tomka*, 66 F.3d at 1308. Upon such a showing, the defendant must articulate a legitimate nondiscriminatory reason for its action. *See Holt v. KMI–Continental*, 95 F.3d 123, 130 (2d

Cir.1996). If the defendant meets this burden, the plaintiff must demonstrate that the defendant's explanations are a pretext for impermissible retaliation. *See Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998). In order to survive a motion for summary judgment, plaintiff must establish a genuine issue of material fact as to whether the employer's reason for discharging her is false pretext and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision. *DeMars v. O'Flynn,* 287 F.Supp.2d 230, 243–44 (W.D.N.Y.2003)

Protected activities under Title VII fall into two categories: opposition and participation. An employee engages in a protected activity when she has (1) "opposed any practice made an unlawful employment practice" by Title VII, or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). In regard to the first category, the plaintiff need not show that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith reasonable belief that the underlying employment practice was unlawful under Title VII. *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). Thus, it is possible for an employee reasonably to believe that specified conduct amounts to discrimination, even if that conduct actually would not qualify as discrimination under the law. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998). The Court must assess the reasonableness of the plaintiff's belief in light of the totality of circumstances. *See Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir. 1996).

Defendants impermissibly retaliate in violation of Title VII when a retaliatory motive plays a part in an adverse employment action, "whether or not it was the sole cause [and] even if valid objective reasons for the discharge exist." *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1038 (2d Cir.1993). Proof of a causal connection can be proven indirectly by showing that the protected activity was followed closely by discriminatory treatment, *see Reed,* 95 F.3d at 1178; *Davis v. State Univ. of N.Y.,* 802 F.2d 638, 642 (2d Cir.1986), through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, *see DeCintio v. Westchester County Med. Ctr.,* 821 F.2d 111, 115 (2d Cir.1987); *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1188–89 (11th Cir.1985), or directly through evidence of retaliatory animus directed against the plaintiff by the defendant. *See Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 444–45 (2d Cir.1999).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997)(internal quotations omitted). However, at the same time, a plaintiff may not defeat a motion for summary judgment by relying on "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985), *cert. den.* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74

### 1. *Prima Facie Case*

 Plaintiff failed to establish a prima facie case of retaliation in violation of Title VII of the Civil Rights Act of 1964. Plaintiff met the first three prongs of the McDonnell Douglas test, as she engaged in protected activity by filing a CHRO complaint alleging religious harassment by her supervisor. Plaintiff also suffered adverse employment actions, including negative work performance evaluations, refusal of promotion, warning letters regarding her workplace behavior, and disciplinary actions, all culminating with her discharge of employment on November 10, 1998. *See Burlington Indus. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)("[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") However, plaintiff failed to show that there was a causal connection between the protected activity and the adverse employment actions she suffered, and therefore did not succeed in proving a prima facie case of discrimination. *See Parmlee v. Conn. Dep't of Revenue Servs.,* 160 F.Supp.2d 294, 304–305 (D.Conn.2001)(granting summary judgment because plaintiff "provided no evidence that the employment decision followed close in time to the protected activity, [or] that he was treated differently after the complaint...").

Barlow has failed to produce any direct evidence of retaliatory animus that would support a finding of a causal nexus between her complaints to management and the adverse employment actions. Without direct evidence, a plaintiff can prove causation indirectly "by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). In this case, the extensive time lapse between plaintiff's protected activity and her dismissal removes any inference of retaliation in her termination. Plaintiff made a complaint to Thomas Weirbonics, one of the DPH's Personnel Officers regarding surplus furniture being sent improperly to DKF, in or around April or May of 1996.[3] (Plaintiff's Deposition at 39, 78). Subsequently, Barlow filed a CHRO complaint regarding McLendon's alleged harassment of her religious preferences on August 12, 1996, which was received by the CHRO on August 29, 1996. (Pl. Exh. 8; Defs. Exh. 8). Plaintiff was not terminated until October 1998, over two years after she made complaints. (Def.'s Exh. 39)

Plaintiff argues that she has met the burden of showing a causal connection between the protected activity and adverse employment actions because immediately after she complained, many of her job duties were taken away, she was scrutinized closely, she received warnings regarding her behavior, and she was given poor work performance evaluations. She asserts that all of these adverse employment actions were in retaliation for engaging in protected activity. (Plaintiff's Memorandum in Opposition to Summary Judgment at 9). However, plaintiff's conclusory allegations that the adverse employment actions she suffered at work were retaliatory in nature are not enough to withstand a summary judgment motion. *Western World Ins. Co. v. Stack Oil, Inc.,*

---

**3.** In plaintiff's deposition, she could not remember the exact date she notified Weirbonics about the furniture issue, but testified that it was after the DPH moved to 410 Capitol Ave., which occurred on March 31, 1996. (Affidavit of Tom Carson).

922 F.2d 118, 121 (2d Cir.1990). ("Mere speculation and conjecture" is insufficient to defeat a motion for summary judgment.) *See also, Hoyt v. Dep't of Children & Families,* 309 F.Supp.2d 299, 306 (D.Conn.2004) (conclusory statements that contradict evidence are insufficient to create a genuine issue of material fact).

Barlow's amended complaint and moving papers seem to focus her retaliation claim on events that occurred after she filed the 1996 CHRO complaint. However, at the same time, plaintiff seems to assert that she was already retaliated against and harassed prior to her 1996 complaint because she complained about her supervisor Ann McLendon's unwelcome religious harassment against her. In plaintiff's 56(a)(2) statement of undisputed facts, she states that:

> Plaintiff was the recipient of retaliation. 'Plaintiff complained both internally and externally regarding Ms. McLendon's unwelcome religious harassment against her...These activities took the form of religious gifts, pamphlets, Christian literature, cards, audio taped meddages[messages] and other communications. The above mentioned actions took place from 1988 through 1991. After making a ·complaint to Affirmative Action and writing a letter to the Governor's office, Ms. Barlow received no relief. The religious harassment continued until 1996 (August) when Ms. Barlow filed a complaint with the CHRO alleging religious harassment and retaliation'...Plaintiff was the victim of retaliation from management as a result of her filing internal and external complaints of religious harassment. Plaintiff had filed numerous complaints relative to religious harassment. (Plaintiff's Exhibit 15A, 15B).

Pl.'s Statement of Disputed Facts, ¶ 25 at 16.

Plaintiff produces no evidence that she made complaints regarding religious harassment prior to her 1996 CHRO complaint. In the above paragraph, plaintiff sights to Exhibits 15A and 15B attached to her Memorandum in Opposition to Defendant's Motion to Dismiss. While these exhibits are letters plaintiff wrote to the EEOC and the Governor's office regarding retaliation, they were both written in 1998, and therefore cannot stand as evidence that she had made internal complaints prior to the 1996 CHRO complaint. However, even if this court was to assume that plaintiff had made complaints in and around 1991 regarding McLendon's religious harassment, plaintiff has still provided this court with evidence that she was retaliated for making such complaints. In fact, the record shows that from the period of 1990 to 1993, Barlow received some of the highest marks on her employment reviews in her entire history of employment, and was also promoted. In 1990, 1991, and 1992, McLendon rated the plaintiff's overall work performance "very good." On plaintiff's 1992 evaluation, McLendon wrote "Aurice has taken o several new responsibilities during this year, as a result of reduced AIDS Education staff. She has shown herself very willing to learn these new functions." In August 1994, Barlow was promoted to the position of Office Assistance. Because plaintiff failed to produce any evidence that she suffered any adverse employment action during this time, this court focuses the remaining discussion on whether or not plaintiff was retaliated against subsequent to filing her EEOC and "whistleblower" complaints.

Based on the exhibits that both plaintiff and defendants submitted with their moving papers, it is clear that many of the changes in Barlow's job duties and the negative performance evaluations Barlow received occurred before she filed her

CHRO complaint in 1996. First, the evidence before the court strongly suggests that any adjustments of plaintiff's job duties that occurred was a result of the structural changes in the AIDS Department at that time, and was not in retaliation for her complaints. During the early to mid 1990's, the Aids Department of the DPH expanded its programs extensively. (Affidavit of Tom Carson). The DPH hired a contractor, Dunne Kimmel and Fein ("DKF") to perform many of the tasks that Barlow had previously been involved in. (Barlow Dep. at 57–64). When pressed about the reasons for which her job duties were reduced in her deposition, plaintiff herself was unable to clearly attribute her change in job responsibilities to the fact that she filed the CHRO complaint regarding the religious harassment or the whistle-blower complaint on the furniture. Plaintiff admitted that some of her old job responsibilities were taken away because the Department of Health began to contract out many responsibilities of Barlow when the program expanded. *Id.* at 61–2. As she explained, "when I started, it was maybe no more than ten people. Then, as the years went by, it grew. More money came in and it got to be a better program because we needed to educate people and have people that would give us expertise." *Id.* At 63. Barlow also stated that many of her job duties were taken away while the department was still at their old location, before plaintiff had filed her whistleblower or CHRO complaints. (Deposition of Barlow at 39–40) Accordingly, plaintiff failed to provide sufficient facts, supported by evidence, that her job duties were changed as a result of her engaging in protected activity.

In addition, in contrast to plaintiff's allegations, there is no evidence on the record that the disciplinary actions and poor evaluations she received were a result of her whistle-blowing activity or were retaliatory in nature. In fact, as early as September 1993, Barlow's supervisors gave her a memorandum entitled "Workplace Behavior Expectations" which outlined specific areas Barlow needed to improve. (*Id.*) Plaintiff herself submitted seven exhibits, all of which were complaints, letters of warning, or documentation of inappropriate incidents of behavior regarding Barlow's workplace behavior from co-workers and supervisors, all of which were written before plaintiff filed her CHRO complaint. (See, e.g. Pl. Exh.s 9, 17, 42, 30–B).

The record also reflects the fact that defendants gave plaintiff numerous opportunities to improve her workplace performance, but plaintiff's behavior only worsened as time went on. Plaintiff cites her failure to be promoted to position of the AIDS Pre-professional Trainee, as evidence of retaliation. Because plaintiff received a 98 (a passing score) on the Decentralized Promotional Exam, she was given an interview for the position Friday, April 4, 1997. (Pl.'s Exh.'s 3–F, 3–G). On June 13, 1997, plaintiff was informed that she was not offered the PPT position (Pl.Exh. 3–G). Prior to this time, plaintiff had taken a several month voluntary leave of absence. Upon her return in January 1997, Barlow had excessive absences and repeated tardiness, and had numerous explosions at work. (Def.'s Exh. 22, 25, 5). Defendant's therefore have submitted adequate evidence that they had legitimate reasons to choose another candidate for the promotion.

Although under the State of Connecticut's Collective Bargaining Agreement defendants could have fired plaintiff after she received her second unsatisfactory evaluation, they did not. (Affidavit of Tom Carson) It was not until plaintiff received her third unsatisfactory evaluation in 1998, and there had been numerous incidents where plaintiff had altercations with employees

and exhibited combative behavior that defendants informed Barlow they were considering her. termination. Most telling that defendants did not have any improper motive in its actions toward plaintiff is the fact that the DPH offered plaintiff a last chance agreement that would have allowed her to keep her job, with the sole condition that she discontinue her disruptive conduct at work. (Affidavit of Tom Carson, Exhibit 38). Plaintiff denied this opportunity.

For all the above reasons, this court finds that there is insufficient evidence from which a reasonable jury could conclude that the adverse employment actions plaintiff suffered were related to the protected activity she engaged in, and plaintiff has not demonstrated a prima facie case of retaliation.

### 2. Legitimate Non–Discriminatory Reason

 Even if this court were to find an inference of discrimination in the discipline, failure to promote, and eventual termination of plaintiff, defendants have provided a legitimate, non-discriminatory reason for their actions. Plaintiff's workplace behavior had been in question for almost ten years before she was eventually terminated. Documents submitted by both parties suggest that the DPH attempted multiple times to counsel plaintiff as to how to improve her performance at work. Even after the series of conflicts plaintiff had with co-workers and after receiving several unsatisfactory work evaluations, defendants still gave plaintiff an opportunity to keep her job, which she refused. Accordingly, plaintiff has failed to provide any evidence that her own behavior was not the true reason she received the treatment she did at work, and therefore there is no basis for finding this explanation is pretext for any discriminatory actions. *Reeves v. Sanderson*

*Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). *See also Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985) (granting summary judgment at the pretext stage where the plaintiff has "provided no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of pretext."). This court therefore grants summary judgment as to plaintiff's Title VII retaliation claim.

### C. Wrongful Discharge in Violation of Conn. Gen.Stat. § 31–51q

Plaintiff's Amended Complaint also alleges that the defendants discharged plaintiff in retaliation for her exercise of her right to free speech and freedom of association, in violation of Conn. Gen.Stat. 31–51q. Conn. Gen.Stat. § 31–51g, provides in pertinent part that:

> any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the constitution of the state ... shall be liable to such employee for damages caused by such discipline or discharge
> . . . .

Conn. Gen.Stat. Ann. § 31–51q (West 1987).

 In order to demonstrate a violation of section 31–51q, Conn. Gen.Stat., plaintiff must prove that: (1) she was exercising rights protected by the first amendment to the United States Constitution (or an equivalent provision of the Connecticut Constitution); (2) she was fired on account of her exercise of such rights; and (3) her exercise of her first amendment (or equivalent state constitutional) rights did not substantially or materially interfere with

her bona fide job performance or with her working relationship with her employer. *Lowe v. Amerigas, Inc.*, 52 F.Supp.2d 349, 359 (D.Conn.1999); *Winik–Nystrup v. Manufacturers Life Ins. Co.*, 8 F.Supp.2d 157, 159 (D.Conn.1998). To be protected by the first amendment, plaintiff's speech must have been on a matter of public concern, and plaintiff's interest in expressing herself on the particular matter must not have been outweighed by any injury the speech could cause to the employment relationship. *Waters v. Churchill*, 511 U.S. 661, 668, 114 S.Ct. 1878, 128 L.Ed.2d 686, (1994) (brought under 42 U.S.C. § 1983); *Cotto v. United Technologies Corp.*, 48 Conn.App. 618, 630, 711 A.2d 1180, cert. granted in part, 245 Conn. 915, 717 A.2d 233 (1998). n6

■ Primarily, plaintiff's whistleblower complaint regarding the state furniture and her CHRO complaint alleging religious harassment did not touch upon a matter of public concern. Speech on a purely private matter, such as an employee's dissatisfaction with the conditions of h[er] employment, does not pertain to a matter of public concern." *Lewis v. Cowen*, 165 F.3d 154, 161–62 (2d Cir.1999). *See also Saulpaugh v. Monroe Com. Hosp.* 4 F.3d 134, 144–143 (2d Cir.1993) (finding workplace harassment complaints that related to plaintiff's individual situation complaints were personal in nature and therefore do not implicate the first amendment). But even if plaintiff's whistle-blower complaint regarding the furniture or the religious harassment were matters of public concern, she would still be unable to satisfy the causation prong of the test for the same reasons that she cannot make out a Title VII retaliation claim. *See Menes v. CUNY Univ.*, 92 F.Supp.2d 294, 310 (S.D.N.Y.2000). This court has already determined that the defendant had legitimate reasons to terminate Barlow, and

that plaintiff failed to create a genuine issue of material fact as to whether the DPH's actions toward the plaintiff were retaliatory conduct in response to plaintiff making complaints against her supervisors. The Court concludes, therefore, that plaintiff's wrongful discharge claim fails on the merits for the same reasons, and summary judgment is granted as to Count II of plaintiff's amended complaint.

**D. Right to Equal Protection under 42 U.S.C. § 1983 Against Beth Weinstein.**

Count Three of plaintiff's amended complaint asserts that Beth Weinstein deprived plaintiff of the right to equal protection under the law as guaranteed by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983. Plaintiff alleges this deprivation occurred because she exercised her right to free speech, and because of "her status as a person perceived as having an emotional or psychiatric disorder." (Complaint at 12.)

So much as plaintiff is attempting to make a First Amendment retaliation claim under 42 U.S.C. § 1983, she would be required to make a similar showing as mandated under her first amendment wrongful discharge claim pursuant to Conn. Gen. Stat. Ann. § 31–51q. *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir.2002). Because plaintiff has not established a claim under Conn. Gen.Stat. § 31–51q, she cannot sustain a comparable claim under the Equal Protection Clause.

■ With respect to plaintiff's claim that defendant Weinstein violated her right to equal protection on the basis of her status as someone "perceived as having a mental disorder," summary judgment is also appropriate. In plaintiff's memorandum in opposition to summary judgment, she did not respond to defendants' argument that Barlow failed to meet the burden of establishing an equal protection violation based on her perceived status of

having a mental disorder. On this basis alone, the Court could consider these claims abandoned. *See, e.g., Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y.2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F.Supp.2d 233, 249 (S.D.N.Y. 2002) (Where plaintiff's summary judgment opposition papers "made no argument in support of [one] claim at all," the court dismissed the claim as "abandoned.")

█ In any event, this court agrees with defendants that plaintiff failed to meet the burden required to prove a selective enforcement claim under § 1983. As the Second Circuit Court of Appeals has made clear, "a selective-enforcement claim based on the Equal Protection Clause must allege that: '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Giordano v. City of New York*, 274 F.3d 740, 750–751 (2d Cir.2001) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir.1999)). First, plaintiff has failed to provide any evidence that Weinstein treated her differently from other similarly situated persons. In fact, she never event attempted to identify any individuals who were similarly situated to her. There is absolutely no evidence on the record that there were other DPH employees who en-gaged in similar conduct as plaintiff, or who were perceived as being disabled, yet escaped discipline. Further, plaintiff failed to produce any evidence that Weinstein perceived her as having a disability. In support of her equal protection claim, Barlow asserts that the fact that Weinstein referred her to DPH's Employee Assistance Program (EAP) each time she was disciplined, requested Barlow undergo a fitness for duty exam, and made comments about Barlow's tendency to explode, proves that Weinstein perceived her as being mentally unstable. Yet even if Weinstein did perceive Barlow as being mentally unstable, this would not qualify as a disability as defined by the American with Disabilities Act, and therefore would not constitute an impermissible consideration necessary to prove a selective enforcement claim under § 1983.[4] Consequently, summary judgment is granted as to plaintiff's § 1983 claim as well.

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment [Dkt. No. 47] in its entirety. The defendants' motion to strike certain exhibits is granted in part and denied in part [Dkt. No. 62]. Defendants' motion to strike portions of the plaintiff's 56(a)(2) statement is DENIED as moot [Dkt. No. 62].

The Clerk is hereby directed to close this file.

SO ORDERED

---

4. A disability is defined as (a) "a physical or mental impairment that substantially limits one or more of an individual's major life activities..." 29 C.F.R. 1602(j)(1). Ironically, while asserting she was wrongfully perceived as having a mental disability, plaintiff seemingly is trying to convince this court that she has a hearing disability, in order to account for all the complaints regarding plaintiff's inappropriately loud voice as disruptive and unprofessional.